UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David Parker,

      Plaintiff,

v.                                                                             Civil Action No. 2:10-CV-195

Commissioner of
Social Security Administration,

      Defendant.

### OPINION AND ORDER
(Docs. 6, 9)

Plaintiff David Parker brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Pending before the Court are Parker's motion to reverse the Commissioner's decision (Doc. 6), and the Commissioner's motion to affirm (Doc. 9).

For the reasons set forth below, Parker's motion is DENIED, and the Commissioner's motion is GRANTED. Pursuant to Local Rule 7(a)(6), and no party having made a written request for oral argument, the Court finds that oral argument is not required.

### Background

Parker was born on January 24, 1961, and thus was twenty-three years old on the alleged disability onset date of August 16, 1984 and forty-nine years old on the date of

the administrative hearing, April 2, 2010. (Administrative Record ("AR") 21, 28, 114, 158.) Parker completed school through the eighth grade, and has a GED. (AR 30, 44, 170.) He has work experience as a cleaner, a laborer, a painter, a custodian, and a cook. (AR 31, 164, 172, 232.) He has been incarcerated for most of his life since he was a teenager, and has a long history of polysubstance abuse[1] involving cannabis, cocaine, and alcohol, resulting in multiple periods of residence at detoxification facilities. (AR 29, 232, 235, 645, 793, 848, 1061.) Parker has been diagnosed with polysubstance abuse disorder, polysubstance dependence[2], bipolar affective disorder, adjustment disorder with depressed mood, antisocial personality disorder, and Hepatitis C. (AR 233, 235, 449, 648, 688, 1009, 1060, 1132, 1168.)

On August 28, 2007, Parker filed an application for SSI benefits, which was denied initially and on reconsideration. (AR 44-47, 52-54, 61-67, 114-19.) Parker alleges that, starting on August 16, 1984, he has been unable to work due to bipolar disorder, manic depression, and paranoia. (AR 163.) He further alleges that he has

---

[1] According to the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), the "essential feature" of a diagnosis of Substance Abuse is "a maladaptive pattern of substance use manifested by recurrent and significant adverse consequences related to the repeated use of substances." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 182 (4th ed. 2000). "There may be repeated failure to fulfill major role obligations, repeated use in situations in which it is physically hazardous, multiple legal problems, and recurrent social and interpersonal problems . . . ." *Id.*

[2] The DSM-IV indicates that the "essential feature" of Substance Dependence is "a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues use of the substance despite significant substance-related problems. There is a pattern of repeated self-administration that usually results in tolerance, withdrawal, and compulsive drug-taking behavior." *DSM-IV*, at 176. The Manual defines "Polysubstance Dependence" as a diagnosis reserved for a behavioral pattern exhibited by an individual who has repeatedly used at least three groups of substances, not including caffeine or nicotine, within a twelve month period, with no single substance predominating. *Id.* at 270. A diagnosis of Substance *Dependence* preempts a diagnosis of Substance *Abuse* if the individual's pattern of substance use has ever met the criteria for Dependence for that class of substances. *Id.* at 182.

difficulty working with others, cannot concentrate, has problems following directions, and is "always tired." (*Id.*) On April 2, 2010, a hearing was held on Parker's application. (AR 21-41.) Parker appeared and testified at the hearing, and was represented by counsel. (*Id.*) Additionally, a vocational expert was present at the hearing, and a lay witness, social worker Ian Koch, testified. (*Id.*)

On April 12, 2010, Administrative Law Judge ("ALJ") Debra Boudreau issued a decision finding that Parker was not disabled under the Social Security Act, given that a substance use disorder was a contributing factor material to the determination of disability. (AR 7-15.) Thereafter, the Decision Review Board affirmed the ALJ's decision. (AR 1-3.) Having exhausted his administrative remedies, Parker filed his Complaint in the instant action on August 10, 2010. (*See* Doc. 1.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed

3

impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

The Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 848, 852 (enacted March 29, 1996) added an extra step to the five-step sequential evaluation for claimants with drug and alcohol addiction, such as Parker here. *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). Specifically, the Act amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see Porter v. Chater*, 982 F. Supp. 918, 921-22 (W.D.N.Y. 1997). Accordingly, 20 C.F.R. § 404.1535(a) states as follows: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine

4

whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." The "key factor" in this determination is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1); *see Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005). Given that the claimant is the party best suited to demonstrate whether he or she would still be disabled in the absence of drug or alcohol addiction, "[w]hen the record reflects drug or alcohol abuse, the claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination." *Eltayyeb v. Barnhart*, No. 02 Civ. 925 (MBM), 2003 WL 22888801, at *4 (S.D.N.Y. Dec. 8, 2003) (citing *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

Employing this sequential analysis, ALJ Boudreau first determined that Parker had not engaged in substantial gainful activity since the date of his application, August 28, 2007.[3] (AR 9.) At step two, the ALJ found that Parker had two severe impairments: "poly-substance abuse disorder" and affective disorder. (AR 10.) The ALJ found that Parker's Hepatitis C caused no more than minimal functional limitations, and thus was a non-severe impairment. (*Id.*) At step three, the ALJ found that Parker's impairments,

---

[3] Presumably, the ALJ assessed Parker's eligibility for benefits from the date that his SSI application was filed, August 28, 2007, instead of from the alleged onset date of August 16, 1984, given that a claimant is not eligible for SSI benefits until he files an application, 20 C.F.R. § 416.202(g); and payment of SSI "may not be made for any period that precedes the first month following the date on which an application is filed[,]" 20 C.F.R. § 416.335. Although not discussed in either party's brief or in the ALJ's opinion, it appears from the record that Parker did not file an application for disability insurance benefits because he did not meet the "insured status" requirement for an award of such benefits. 20 C.F.R. § 404.101(a). (*See* AR 49, 53, 120, 132.)

including his substance abuse disorder, met listing 12.04 of the Listings. (AR 10-11.) The ALJ noted, however, that in the absence of drugs and alcohol, Parker's disorder was controlled with treatment. (AR 11.) Accordingly, the ALJ found that, if Parker stopped the substance abuse, his remaining limitations would not cause more than a minimal impact on his ability to perform basic work activities, and thus Parker would not have a severe impairment or combination of impairments. (AR 11-14.) The ALJ concluded that Parker had not been disabled at any time from the date of his application through the date of the decision. (AR 14.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## **Analysis**

Parker makes two arguments: (1) the ALJ's finding that Parker's substance abuse disorder is a contributing factor material to the determination of disability is not supported by substantial evidence; and (2) the ALJ's evaluation of Ian Koch's testimony was improper. For the reasons explained below, the Court finds these arguments unavailing.

7

I.      "Materiality" of Parker's Substance Abuse Disorder

Parker asserts that the ALJ's findings regarding the "materiality" of his substance abuse disorder are not supported by substantial evidence; and that his affective disorder, personality disorder, and bipolar disorder are severe in the absence of his substance abuse. He further argues that the ALJ failed to consider all the evidence regarding the materiality of his substance abuse disorder.

A.      Substantial Evidence Supports ALJ's Materiality Determination.

The Court finds that substantial evidence supports the ALJ's finding that Parker's substance abuse was a contributing factor material to the determination of Parker's disability (hereafter referred to as the ALJ's "materiality determination"). The ALJ clearly stated in her decision the reasons for her materiality determination. Specifically, she noted that, "when [Parker] is abstinent [from abusing substances] his symptoms appear controlled by medications." (AR 10.) The ALJ continued: "[S]ince the claimant's August 28, 2007 application date, [he] has had numerous episodes where he was functioning well, followed by a rapid decompensation related to a substance abuse relapse." (*Id.*) The ALJ then described in detail, citing to specific supporting exhibits, a typical "episode" wherein Parker abused drugs and alcohol for a period of several months; entered into a rehabilitation center; was discharged from that center due to drug abuse; contemplated committing suicide; admitted himself into a hospital; and finally, experienced a resolution of suicidal ideation, appropriate interaction with others, and a bright affect while being treated for his substance abuse disorder. (AR 11 (citing AR

1060, 1067-68, 1070); *see also* AR 654, 1132-33.)  Later in her opinion, the ALJ cited to another episode wherein Parker was voluntarily admitted to inpatient psychiatry due in part to a relapse into alcohol and drug use; and noted that, after being hospitalized for several days, Parker was "'very hopeful for his future[,]'" denied suicidal ideation, and was only mildly depressed.  (AR 13 (citing AR 645, 654).)

A review of the voluminous record reveals what the ALJ aptly refers to as a pattern of "chronic poly-substance abuse periodically punctuated by episodes of abstinence."  (AR 10.)  The record also reveals that, when Parker is abusing substances or engaged in the withdrawal phase of drug and alcohol detoxification, he is markedly impaired in his ability to function and work (*see, e.g.*, AR 645, 1060, 1062-63, 1067, 1070, 1132, 1167, 1266, 1269), but when he abstains from such abuse and takes his medication, he is only mildly impaired (*see, e.g.*, AR 654, 715, 783, 1060, 1087-88, 1095-96, 1133, 1167, 1204, 1217, 1226, 1307, 1308, 1324).  This conclusion is reflected in the opinion of state agency consultant William Farrell, Ph.D., which the ALJ reasonably gave the "most weight."  (AR 11, 13 (citing AR 1118).)  Notably, Dr. Farrell's opinion that, "[i]n the absence of drugs and alcohol, [Parker's] bipolar disorder appears to be controlled and his psychiatric impairment is not severe[,]" does not conflict with the opinion(s) of any other treating or consulting physician.  (AR 1118.)

Parker argues that "a review of some of [his] prison medical records" demonstrates that he had a "severe impairment while incarcerated and apparently free of

9

drug and alcohol use," thereby discrediting the ALJ's materiality determination.[4] (Doc. 6 at 3, 4.) However, Parker's reference to isolated portions of the record does not change the fact that the record *as a whole* supports the ALJ's materiality determination, as discussed above. When the court reviews the record to determine whether the Commissioner's position is supported by substantial evidence, the court reviews the record "as a whole[,]" meaning that, in assessing whether the evidence supporting the Commissioner's position is substantial, the court "will not look at that evidence in isolation but rather will view it in light of other evidence that detracts from it." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). And where the record contains substantial evidence to support two positions, the ALJ, as fact finder, is charged with choosing between them. *Id*; *see Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

In this case, the ALJ accurately stated that "[a] review of [Parker's] prison medical records show that while sober, he attended Alcoholics Anonymous meetings, and *more often than not*, he made good eye contact, had a positive attitude, a stable mood, and adjusted well to the facility[.]" (AR 13 (citing AR 1197-1329), emphasis added.) There are several prison records which document that Parker was experiencing anxiety and unstable moods while incarcerated, but generally there was a specific situational stressor which brought about that reaction, such as not having a place to live on his release date (AR 1307-08, 1317), his roommate calling him a "thief" (AR 1317), and his girlfriend

---

[4] Stating that "the records are not indexed in the record" (Doc. 6 at 3), Parker's counsel fails to direct the Court to those specific prison medical records which allegedly support his argument. The Court is unaware of any pages contained in the 1,000-plus page administrative record in this case which are not paginated or which could not have been referenced in relation to properly paginated pages. In the future, if counsel wishes the Court to consider specific pages from the record in conjunction with a specific argument, it would be of assistance if the Court was directed to those pages.

being homeless and pregnant (AR 1267).

The specific evidence that Parker references in support of his argument that the evidence does not support the ALJ's materiality determination merely indicates that he suffered an anxiety attack in March 2006; he was diagnosed as "bipolar" in May 2006; he had a manic episode in March 2007; and his GAF scores were 45, 50, and 55, respectively, on various dates. (Doc. 6 at 3-4.) The GAF scores are addressed in detail below. With respect to the bipolar diagnosis, as the Commissioner points out, the mere diagnosis of an ailment on a particular date is not sufficient to prove disability, as an objective diagnosis "says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The same rule holds true with respect to isolated events such as anxiety attacks and manic episodes. Additionally, the diagnosis of an ailment or recording of isolated events on particular dates says nothing about the duration of the underlying condition, and whether it continued for a period of "not less than 12 months," as required by the regulations. 42 U.S.C. § 423(d)(1)(A); *see also* C.F.R. § 416.920(a)(4)(ii). A review of the record reveals that, although Parker was consistently diagnosed with bipolar disorder (which is often associated with anxiety attacks and manic episodes), he was able to control this disorder with medication when he was not abusing substances. (*See, e.g.*, AR 449, 541, 583, 1085, 1087.)

Finally, Parker cites to a Tenth Circuit case and a teletype quoted therein[5] in support of the argument that the existence of "some" documented "long periods of abstinence" from drugs and alcohol, including while he was hospitalized and while in

---

[5] The quoted teletype advises ALJs to err on the side of granting benefits if it is impossible to disentangle a claimant's mental illness from his or her substance abuse. *See Salazar v. Barnhart*, 468 F.3d 615, 623-24 (10th Cir. 2006).

11

prison, demonstrate that he had a severe impairment. (Doc. 6 at 7.)  Preliminarily, Parker fails to cite to any authority designating the particular teletype quoted in his brief or the Commissioner's teletypes generally as binding or even persuasive authority in the Second Circuit.  To the contrary, the Ninth Circuit has held that "internal agency documents such as [Teletype provisions] do not carry the force of law[;] . . . are not binding upon the agency[;] [and thus] do not create judicially enforceable duties[.]" *Parra v. Astrue*, 481 F.3d 742, 749 (9th Cir. 2007) (citations omitted).  Moreover, in the Tenth Circuit case cited in Parker's brief, the Court explained that the ALJ's finding that the claimant's mental impairments improved after a period of sobriety was based on "a mistaken reading of the evidence." *Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006).  In this case, Parker points to no erroneous factual statements or unsupported findings in the ALJ's decision.  Rather, the Court finds that the decision is factually accurate and supported by substantial evidence, as discussed above.

  Finally, in an attempt to demonstrate that his impairment "continues after a period of abstinence" (Doc. 6 at 7), Parker cites to psychiatric hospitalization records from Vermont State Hospital (*id.* at 7-9).  Not only do these records date back to almost ten years prior to Parker filing his SSI application, but they also fail to provide support for Parker's position, given that (a) they include statements that Parker "noted an improvement in his depressive symptoms[,]" "was responding well" to medication, "had made progress [overall]," and was "future oriented"; and (b) they include primary diagnoses of alcohol and cannabis dependence upon discharge, thus failing to indicate Parker's condition absent such dependence.  (AR 234-35.)

### B.     Parker's GAF Argument Fails.

Parker asserts that the ALJ "fail[ed] to note" his Global Assessment of Functioning ("GAF") scores of 45, 50, and 55, which Parker contends indicate a severe impairment. (Doc. 6 at 2-4.) "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 32 (4th ed. 2000)). Parker's GAF scores of 45 and 50 place him in the category of "41-50," which indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV*, at 32. Parker's score of 55 places him in the category of "51-60," which indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)." *Id.*

Parker's GAF argument fails for a number of reasons. First, Parker cites to no authority, and the Court is aware of none, holding that a GAF score – in and of itself – demonstrates that an impairment significantly interferes with a claimant's ability to work. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511(6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score."). In fact, this Court has concluded otherwise, holding that, although a low GAF score may constitute evidence of severe limitations of daily functioning, it is only

13

"one factor" to consider in determining an individual's ability to perform substantial gainful activity. *Beckley v. Astrue*, No. 2:06-CV-20, slip op. at *11 (D. Vt. May 12, 2009) (Niedermeier, Mag. J.). Other circuits have similarly held. *See, e.g., Jones v. Astrue*, No. 09-3263, 2010 WL 3396835, at *8 (8th Cir. Aug. 31, 2010); *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005); *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003); *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003). The Seventh Circuit explained that the GAF scale "measures a 'clinician's judgment of the individual's overall level of functioning[,]'" and "is intended to be used to make treatment decisions[.]" *Wilkins*, 69 F. App'x at 780 (quoting *DSM-IV, Text Revision*, at 32 (2000)). But, continued the court, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score[.]" *Id.* (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Likewise, the Sixth Circuit has held that an ALJ's failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination. *Howard*, 276 F.3d at 241. Furthermore, although there are indeed medical reports in the record assigning Parker GAF scores as low as 45 and 50 (*see, e.g.*, AR 1061, 1132), there are also reports assigning him a score as high as 75 (*see, e.g.*, AR 449, 739), demonstrating that Parker's GAF score fluctuated, presumably based on a number of factors, the most significant being whether or not he was abusing substances.

II.     **Opinion of Ian Koch**

Parker contends that the ALJ failed to properly evaluate the testimony of Ian Koch, a self-described "substance abuse service coordinator" who was working at

14

Pathways to Housing in Vermont during the relevant time period. (AR 35-36.) Koch testified at the administrative hearing that Parker's mental illness "keeps him from being able to show up" for meetings and prevents him from being able to do basic tasks such as the laundry. (AR 36, 38.) He further testified as follows:

> I've seen [Parker] in periods of sobriety and periods of drinking, and it almost appears that [he] is almost worse when he's sober. It appears that when [he] [ha]s . . . even just had a couple of beers in him, he seems to have a little bit of relief from the torment of, of being sober. It appears that . . . when he's sober he's just not able to communicate certain things or get certain tasks done . . . .

(AR 37.) The ALJ afforded Koch's testimony "minimal weight[,]" explaining:

> I do not find that Mr. Koch has the ability to determine that it is the claimant's mental health that causes him to miss appointments or be unwilling or unable to do his own laundry. Mr. Koch has only a bachelor's degree in social studies[6] and he has no professional expertise in evaluating mental health.

(AR 14.) The ALJ also noted that Koch's testimony at the hearing was inconsistent with the medical records as a whole and Parker's own statements at the hearing, which "demonstrated a high level of functioning as he showed logical thoughts, and a robust vocabulary[,]" as well as statements "articulate[ly]" made and "clearly presented." (*Id.*)

Although Parker's counsel appears to have presented Koch as a medical expert with specialized knowledge at the administrative hearing, he now argues that Koch's testimony was "observation testimony," and implies that the ALJ erred by treating such testimony as "diagnosis testimony." (Doc. 6 at 10.) Regardless of whether Koch's testimony is evaluated as medical expert or lay witness testimony, substantial evidence

---

[6] The ALJ's statement that Koch has a bachelor's degree in "social studies" (AR 14) is inaccurate. In fact, Koch testified at the administrative hearing that he has a bachelor's degree in "professional studies with a focus on social work." (AR 39.) The error is harmless, as the ALJ's finding that Koch "has no professional expertise in evaluating mental health" (AR 14) remains accurate.

supports the ALJ's findings with respect to Koch, and Parker has presented no reason to disturb them. The ALJ afforded minimal weight to Koch's testimony for three stated reasons: (1) Koch was not qualified to determine whether Parker's mental health issues caused him to miss appointments and require assistance doing household chores; (2) Koch's testimony was inconsistent with the medical records as a whole; and (3) Koch's testimony was inconsistent with Parker's own statements and the manner in which those statements were presented at the hearing. (AR 14.)

Although Parker does not argue that Koch was qualified to opine on the cause of Parker's mental health issues, the Court notes that it was reasonable for the ALJ to find that Koch was not so qualified. Specifically, it was appropriate for the ALJ to give more weight to the opinion of Dr. Farrell, a psychologist who is an expert in the evaluation of medical issues presented in disability claims and who reviewed Parker's medical record and social security forms, than to the opinion of Koch, who holds merely a bachelor's degree and does not appear to have reviewed the record. *See* 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); 20 C.F.R. § 416.927(d)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, . . . and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion."); 20 C.F.R. § 404.1527(f)(2)(ii) ("State agency . . . psychological consultants . . . are highly qualified . . . medical specialists who are also

experts in Social Security disability evaluation . . . ."); SSR 96-6p, 1996 WL 374180 (Jul. 2, 1996). Clearly, Dr. Farrell is more qualified than Koch on the crucial issue of whether Parker would be considered "disabled" but for his substance abuse disorder.

Koch may, however, be more qualified than Dr. Farrell from a lay perspective with respect to Parker's attendance at meetings and completion of household chores without assistance. Contrary to Parker's argument, the ALJ did not ignore Koch's lay opinions and observations, but rather, found that they were not supported by the record, including Parker's own statements. (*See* AR 14.) Substantial evidence supports this finding. For example, Parker testified at the hearing that, although he required assistance in following schedules, making appointments, and advocating for himself; he was "moving towards obtaining [his] own apartment with the help of [Pathways to Housing]." (AR 28-29.) He also testified that he may have had problems understanding things his attorney explained to him "initially[,]" but he was able to "figure it out." (AR 29.)

## Conclusion

For the above reasons, Parker's motion (Doc. 6) is DENIED, and the Commissioner's Motion (Doc. 9) is GRANTED. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

Dated at Burlington, in the District of Vermont, this 13th day of May, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge